Transportation Appeals Board
No. 2004-302

APPEAL OF NEW HAMPSHIRE DEPARTMENT OF TRANSPORTATION
(New Hampshire Transportation Appeals Board)

Argued: February 9, 2005
Opinion Issued: September 2, 2005

*Kelly A. Ayotte*, attorney general (*Craig S. Donais*, assistant attorney general, on the brief, and *Lynmarie C. Cusack*, attorney, orally), for the petitioner.

*Barto and Puffer, P.A.*, of Concord (*Mark H. Puffer* on the brief and orally), for the respondent.

BRODERICK, C.J. The petitioner, the New Hampshire Department of Transportation (DOT), appeals a decision of the appeals board (board), *see* RSA 21-L:14 (2000), requiring that a driveway permit be granted to the respondent, David C. Dobbins. The permit would allow direct access to a State highway pursuant to an exception to the so-called three driveway rule promulgated by the DOT. The respondent filed a cross-appeal contesting the validity of the three driveway rule. We conclude that the three driveway rule is a valid exercise of the DOT's administrative rulemaking authority and reverse the board's decision.

I

The procedural history of this case is protracted but its recitation is necessary to the resolution of this appeal. In the 1980s, Frederick and Sylvia Jennings owned a thirty-one acre parcel in Dunbarton, which had

1,678 feet of frontage along Jewett Road, a State-maintained highway. In 1986, they subdivided the parcel into five lots. Thereafter, they sought permission from Maintenance District 5 (District 5) of the DOT to construct several driveway access points for the subdivision onto Jewett Road. A permit for four driveways was issued, with lots 1 and 2 to share a common driveway. The permit, however, expired in June 1987 because construction of all the approved driveways had not been completed. In the 1980s and 1990s, the Jenningses sold all five lots to various purchasers at different times, and through various permits, District 5 granted four of the five lots direct driveway access to Jewett Road. Lot 3 remains without such access, and the respondent's ability to secure it is at the center of the dispute before us.

In 1988, the respondent purchased lot 2 from the Jenningses, and secured a permit to construct a driveway onto Jewett Road. By December 1988, Mr. Jennings, who still owned lot 3, knew that the lot had not been provided its own driveway permit, and sought relief from District 5. In denying the request, District 5 noted that the four driveways it authorized in 1986 was one more than would be allowed normally. It ruled that "[n]o more than 4 points of access [would] be permitted to this property," and suggested that the driveway for lot 2 be changed to create a common driveway access with lot 1, that lots 2 and 3 share a driveway, or that either lot 2 or 4 grant an access easement to lot 3 for driveway use.

In April 1991, the respondent purchased lot 3 from the Jenningses at a substantially reduced price, as compared to the other lots in the subdivision. He did so with the knowledge that District 5 had refused to grant a fifth access point for lot 3. In 1999, he sought a permit to construct a driveway for lot 3. District 5 denied the request, again reasoning that "the maximum number of driveways allowable [for] the original parcel have already been permitted and constructed." It recommended that he either relocate the driveway for lot 2 to create a common driveway for lots 2 and 3, or create an easement for lot 3 from the existing driveway on lot 2. The respondent did not appeal this decision, and subsequently sold lot 2 without reserving any right of access for lot 3 to Jewett Road.

In January 2000, the respondent renewed his request for a driveway permit for lot 3, stating that the alternative driveway access solutions suggested by District 5 in its 1999 denial of his permit "were not acceptable to him then and are not possible now" since he no longer owned lot 2. District 5 again rejected his application, stating in part:

> It has been clear since 1986 that this property would be served by a maximum of four driveways. You were aware that lot three needed to share an access before you bought it. You were also

aware of the need to share access before you sold [lot two]. Several land transactions have taken place since 1986 with these restrictions in place. It would not be appropriate to change at this time. It is recommended lot three share a driveway with either lot two or lot four.

District 5 denied the respondent's request for reconsideration.

The respondent pursued an appeal of District 5's decision to the commissioner of the DOT. In 2001, the DOT hearings examiner, acting on the commissioner's behalf, determined that the respondent's 1999 and 2000 permit applications to construct a driveway for lot 3 were incomplete on their face and should not have been considered by District 5. He concluded that the "lack of information [was] material, because it prevented the District from considering the full set of facts applicable to this property, and precluded a full consideration of access limitations pursuant to [New Hampshire Administrative Rules,] Tra 302.08." The hearings examiner remanded the matter to District 5 to allow the respondent to submit a complete permit application, and for District 5 to apply the pertinent administrative rules and "make specific findings of fact with respect to each item contained in Section 8 of [the DOT's driveway permit policy] in order to permit a full review of the determination should a further hearing be required." The respondent appealed this remand order to the board, which affirmed the hearings examiner's decision.

In September 2002, the respondent submitted a complete permit application for lot 3. Following its review, District 5 again denied the driveway request. Although noting that the original thirty-one acre parcel had State highway frontage in excess of 1000 feet and thus "qualif[ied] for consideration of an additional point" under the exception to the three driveway rule, District 5 determined that the subdivision had already received "[t]he fourth point of access . . . in light of this condition." District 5 concluded:

> After careful consideration of the . . . documentation and review of this request and the history of driveway permitting to the original parcel, no unusual circumstance or hardship was demonstrated which would satisfy conditions for the granting of a point of access exceeding the four points already permitted.

The respondent again appealed, and following a hearing in June 2003, the DOT hearings examiner affirmed the permit denial. He ruled that the three driveway rule was a valid exercise of administrative authority and was properly applied to this case. The respondent appealed to the board which reversed, concluding that the hearings examiner erred by failing to

apply the exception to the three driveway rule. It ruled that given the evidence presented, the DOT was compelled to grant a driveway permit for lot 3. The DOT appealed, and the respondent cross-appealed.

## II

We first review the relevant statutes and regulations to provide context for the parties' arguments and for resolution of this case. In creating the DOT, the legislature declared that

> the efficient administration of transportation functions is best achieved by the consolidation and unified direction of transportation procedures, programs, and related functions ... [and] that the economic well-being and physical safety of the citizens of New Hampshire are best secured by establishing a single department responsible for transportation functions.

RSA 21-L:1, I (2000). The legislature provided that the DOT

> shall be responsible for ... [p]lanning, developing, and maintaining a state transportation network which will provide for safe and convenient movement of people and goods throughout the state by means of a system of highways ... in order to support state growth and economic development and promote the general welfare of the citizens of the state.

RSA 21-L:2, II (2000). The DOT must "[p]erform[ ] any regulation of transportation activities required by law which is not within the jurisdiction of another state agency," RSA 21-L:2, II(c), "[r]epresent the public interest" in the administration of its functions, and be "responsible to the governor, the general court, and the public for such administration." RSA 21-L:4, I (2000).

Within this comprehensive scheme, the legislature enacted the driveway statute, RSA 236:13, which gives the DOT "broad power to regulate driveways and other means of access to State highways and has made it unlawful for anyone to construct or alter any entrance onto a State highway without complying with the terms of a permit obtained from the [DOT]." *J. E. D. Associates, Inc. v. Sandown*, 121 N.H. 317, 319 (1981) (citing RSA 249:17, I, which is a former version of RSA 236:13). The driveway statute requires a person to obtain a permit from the DOT before constructing driveway access to a class I or class III highway or to the State-maintained portion of a class II highway (State highway). RSA 236:13, I, II (1993). The statute provides the DOT with baseline parameters to consider when determining whether and under what

conditions to grant such a permit. For example, when the DOT grants a permit, the permit shall:

> (a) Describe the location of the driveway, entrance, exit, or approach. The location shall be selected to most adequately protect the safety of the traveling public.
> (b) Describe any drainage structures, traffic control devices and channelization islands to be installed by the abutter.
> (c) Establish grades that adequately protect and promote highway drainage and permit a safe and controlled approach to the highway in all seasons of the year.
> (d) Include any other terms and specifications necessary for the safety of the traveling public.

RSA 236:13, II.

As to the number of access points allowed per parcel of land, the statute prescribes that: "No construction permit shall allow . . . [m]ore than 2 driveways, entrances, exits or approaches from any one highway to any one parcel of land unless the frontage along that highway exceeds 500 feet." RSA 236:13, IV(b) (1993). Further, under RSA 236:13, III (1993), subdivisions are considered a "single parcel of land," and "[u]nless all season safe sight distance of 400 feet in both directions along the highway can be obtained, the commissioner shall not permit more than one access to a single parcel of land, and this access shall be at that location which the commissioner determines to be safest," RSA 236:13, III(b).

The DOT subsequently promulgated New Hampshire Administrative Rules, Tra 302 to govern its issuance of driveway permits. While the DOT adopted such rules in accordance with the Administrative Procedure Act, RSA chapter 541-A (APA), the legislature thereafter exempted the authority of the DOT to promulgate rules effectuating the driveway statute, RSA 236:13, from the requirements of the APA, *see* RSA 541-A:21(g) (1997). The DOT Commissioner adopted New Hampshire Administrative Rules, Tra 302 "as a declaratory ruling by reference." POLICY FOR THE PERMITTING OF DRIVEWAYS AND OTHER ACCESSES TO THE STATE HIGHWAY SYSTEM at 1 (N.H. DOT declaratory ruling no. 2000-01; issued March 10, 2000) (hereinafter referred to and cited as "Driveway Permit Policy" or "N.H. DPP"). The 2000 Driveway Permit Policy contains the three driveway rule that both the hearings examiner and the board examined in their respective decisions. N.H. DPP, *supra* § 8.

Section 8 of the Driveway Permit Policy, entitled "access limitations," outlines the restrictions for the maximum number of access points allowable for a parcel of land. In large part, this section mirrors the

requirements set forth in the driveway statute. *See, e.g.,* N.H. DPP, *supra* § 8(a), (b). It also contains the three driveway rule, which provides:

> Except as provided in subsection (d), when frontage on a single parcel of land or lot of record [exceeds] 152 meters, or 500 feet, no more than 3 driveways or accesses shall be permitted. The construction of internal street systems or service roads outside the highway right of way shall be utilized, if practicable, to provide greater safety for the subdivision occupants as well as other highway users, and to maintain the level of service of the highway.

N.H. DPP, *supra* § 8(c). A "parcel" is defined as a "tract of land under a single or common ownership, including any proposed ... subdivision ...." N.H. DPP, *supra* § 3(t). A "lot of record" is defined as a "parcel of land that was separately described and delineated ... on a locally approved subdivision plan recorded ... on or before July 1, 1971," N.H. DPP, *supra* § 3(q). Thus, a subdivision created after that date is considered as a single lot of record when evaluating the frontage requirement under the three driveway rule. The rule, however, also reserves to the district engineer, who first reviews the permit application, *see* N.H. DPP, *supra* § 4, the authority to grant a driveway permit beyond the presumptive three driveway limit "if warranted by unusual conditions," which generally relate to some distinct characteristic of a particular property. N.H. DPP, *supra* § 8(d). Particular factors are prescribed for the district engineer to consider when deciding whether to grant a permit under the exception. *See* N.H. DPP, *supra* § 8(d).

The respondent's land is part of a tract that was subdivided in 1986. Therefore, under the Driveway Permit Policy, his ability to secure a driveway permit is not reviewed based on the bounds of his particular lot. Rather, his property is considered as part of the entire subdivision tract. Because that tract had more than 500 feet of State highway frontage, the DOT has applied the three driveway rule to the subdivision as a whole. District 5 originally granted the subdivision four access points, with the fourth driveway comprising an exception to the presumptive limit, and the board evaluated the respondent's application as a request for an additional exception.

On appeal, the DOT argues that the board erroneously interpreted the unusual conditions exception as requiring it to identify specific safety concerns that would be compromised before denying the respondent's permit. The DOT contends that the driveway statute was designed to address the general safety hazard caused by the aggregate impact of access points along a State highway, and to provide the DOT with the

discretion to determine the appropriate number of access points for any particular parcel. In his cross-appeal, the respondent challenges the validity of the three driveway rule. He contends that because the DOT relied solely upon the three driveway rule to deny his permit request and acknowledged that no specific safety concern warranted denial of his application, we should affirm the board's decision.

### III

We turn first to the respondent's cross-appeal. He argues that the DOT exceeded its rule-making authority when promulgating the three driveway rule. He contends that because the driveway statute, RSA 236:13, does not address the number of driveways allowed for parcels which exceed 500 feet in length, the DOT's attempt to limit such parcels to three driveways "clearly adds to and modifies the statutory scheme."

It is well established that the legislature may "authorize an administrative board or body to adopt ordinances, rules, by-laws, or regulations in aid of the successful execution of some general statutory provision." *State v. Normand*, 76 N.H. 541, 546 (1913); *see Ferretti v. Jackson*, 88 N.H. 296, 298 (1936). This rule-making authority permits "boards to fill in details to effectuate the purpose of the statute." *Kimball v. N.H. Bd. of Accountancy*, 118 N.H. 567, 568 (1978). Administrative officials, however, "do not possess the power to contravene a statute," *Appeal of Anderson*, 147 N.H. 181, 183 (2001) (quotation omitted), and cannot "add to, detract from, or in any way modify statutory law," *Kimball*, 118 N.H. at 568. Ultimately, we bear the responsibility "to insure that another will is not substituted for that of the legislature when, out of necessity, it delegates certain limited powers." *Id.* at 569. Accordingly, if the DOT in promulgating the three driveway rule acted beyond the limited discretion granted by the legislature, we will declare the rule invalid. *See In re Richard M.*, 127 N.H. 12, 16-17 (1985).

To discern whether the three driveway rule constitutes a proper exercise of administrative rule-making authority, we look first to the intended scope of the rule-making power granted by the legislature to the DOT, *see id.* at 17, and the purpose of the driveway statute legislation, *Appeal of Anderson*, 147 N.H. at 183. In doing so, we review the plain language of the driveway statute, *In re Richard M.*, 127 N.H. at 17, in the context of other statutes relevant to the DOT's authority, *see Appeal of Brady*, 145 N.H. 308, 310 (2000).

The policy of protecting the traveling public on State highways underlies the statutes prescribing the DOT's general authority, *see, e.g.*, RSA 21-L:2, I (2000), as well as its authority for administering driveway permits, *see, e.g.*, RSA 236:13, II. As noted above, the legislature charged the DOT with

the duty of developing and maintaining a safe statewide transportation network. With respect to the driveway statute, the legislature did not provide comprehensive standards for the DOT to follow when reviewing a particular driveway permit application. Instead, it provided basic parameters, such as concern for proper drainage structures, *see* RSA 236:13, II(b), and proper driveway width, *see* RSA 236:13, IV(a). Regarding the number of driveway access points, the driveway statute establishes only two specific restrictions. First, certain types of parcels, like subdivisions, which fail to satisfy the 400-foot "all season safe sight distance" requirement, cannot have more than one access point. RSA 236:13, III(b). Second, all parcels with 500 feet or less of State highway frontage cannot have more than two driveways. RSA 236:13, IV(b). Notably, the statute does not entitle a landowner to any specific number of driveways, and simply prescribes a maximum number allowable in certain instances. Beyond the express restrictions, the DOT necessarily retains discretion to determine how many access points it will grant to a particular parcel, in keeping with the particular safety concerns outlined in the driveway statute, *see, e.g.*, RSA 236:13, II, and the overarching promotion of public safety entrusted to the DOT, *see, e.g.*, RSA 21-L:2, I.

 ▮ Because parties must receive a permit from the DOT before lawfully constructing a driveway and the grant of multiple driveways is discretionary, we conclude that the plain implication is that the DOT may promulgate rules governing the number of access points that may be granted. Any such rules must, of course, effectuate the purpose of the driveway statute, *see Appeal of Anderson*, 147 N.H. at 183, which is to preserve the safety of the traveling public, while affording landowners abutting State highways access to the roadway, *see Merit Oil of N.H., Inc. v. State*, 123 N.H. 280, 281 (1983) (landowner's vested right of access consists only of access to system of public highways not of particular means of access). Accordingly, we conclude that the legislature granted the DOT rule-making authority to determine the number of driveway access points for parcels, including those with more than 500 feet of State highway frontage.

 ▮ We further conclude that the three driveway rule neither conflicts with the standards in the driveway statute nor oversteps the limited discretion granted to the DOT concerning driveway permits. *See Appeal of Anderson*, 147 N.H. at 183-84. The driveway statute is silent as to a maximum number of access points for parcels with State highway frontage in excess of 500 feet. The DOT retains discretion to determine whether multiple driveways will be granted for any parcel, and the three driveway rule does not foreclose a property owner from securing more than three

access points. Rather, the rule creates a presumptive limit of three driveways for any parcel, which includes the entire subdivision tract as it existed in 1971, with more than 500 feet of State highway frontage. The DOT imposed this limitation in order to minimize the number of access points along a State highway. As noted by the hearing examiner in its decision, "[a]s access points are increased, safety is decreased due to the increased number of opportunities for a traveler to conflict with another traveler on the road." Thus, the DOT minimizes conflict points created by any particular parcel by requiring that

> [t]he construction of internal street systems or service roads outside the highway right of way shall be utilized, if practicable, to provide greater safety for the subdivision occupants as well as other highway users, and to maintain the level of service of the highway.

N.H. DPP, *supra* § 8(c). Rather than infringing upon the legislature's authority when devising the presumptive three driveway limit, the DOT was effectuating the very purpose of the driveway statute, as well as its duty to plan, develop and maintain a State transportation network which provides for the "safe and convenient" movement of people and goods, *see* RSA 21-L:2, II(a).

Finally, supporting our conclusion that the three driveway rule is within the DOT's rule-making authority is its long-standing existence without legislative intervention. *Cf. N.H. Retirement System v. Sununu*, 126 N.H. 104, 108-09 (1985) (court defers to long-standing practical interpretation given statute by administrative entity without legislative interference when meaning of statute in doubt). The pertinent provisions of the three driveway rule have been in place for over thirty years. *See* POLICY AND PROCEDURE FOR DRIVEWAYS AND OTHER ACCESSES TO THE STATE HIGHWAY SYSTEM, "Design Requirements" para. 1 (N.H. Dept. of Public Works and Highways) (June 1972). No evidence has been provided that the general court has viewed it as an improper usurpation of its legislative power.

We decline to address the respondent's argument that the DOT also overstepped its rule-making authority by applying the three driveway rule to parcels as they existed on July 1, 1971, the effective date of the driveway statute. The record does not establish that he properly preserved this argument. To the extent the respondent may have advanced this argument before the hearings examiner, he failed to raise it in his notice of appeal to the board. *See* RSA 21-L:18 (2000) (appeal to board treated as rehearing motion under RSA chapter 541); RSA 541:3, :4 (1997) (rehearing motion

must set forth every ground claimed to be unlawful or unreasonable). Thus, we will not address his argument on appellate review.

## IV

We next turn to the DOT's appeal. The DOT argues that the board erred in its interpretation of the unusual conditions exception to the three driveway rule because it required the DOT to identify specific safety concerns presented by the respondent's proposed driveway before denying his permit application. We agree.

"In construing [administrative] rules, as in construing statutes, where possible, we ascribe the plain and ordinary meanings to words used." *Appeal of Flynn*, 145 N.H. 422, 423 (2000) (quotation omitted). "While deference is accorded to an agency's interpretation of its regulations, that deference is not total." *Id.* at 424 (quotation omitted). Here, the parties have neither provided us with the board's prior interpretation of the unusual conditions exception, nor suggested that its construction of such exception has been a long-standing practice. Therefore, while the board's analysis may offer some persuasive insight, it is not necessarily entitled to presumptive weight. *Cf. Sununu*, 126 N.H. at 108-09 (long-standing practical and plausible agency interpretation, without legislative interference, is evidence that construction conforms with legislative intent).

Review of a permit application for an access point beyond the presumed three driveway limit under the unusual conditions exception requires two inquiries: (1) "[w]hether the literal enforcement of the policy will result in unnecessary hardship to the applicant" (unnecessary hardship prong); and (2) "[w]hether the grant of a driveway permit is consistent with the spirit and intent of this policy as expressed in the *Purpose* section above" (policy prong). N.H. DPP, *supra* § 8(d)(1), (2). The unnecessary hardship prong requires consideration of several factors which generally relate to the physical features or characteristics of the parcel which is the subject of the driveway permit request. *See* N.H. DPP, *supra* § 8(d)(1), (2). The policy prong ensures that any driveway permit granted as an exception to the three driveway rule is in keeping with the Driveway Permit Policy, as described in the "purpose" section. *See* N.H. DPP, *supra* § 8(d). That section provides that:

> The purpose of this policy is to provide a uniform procedure throughout the state for receipt of applications, review of submissions, and issuance of driveway permits. All review of requests for access to the state highway system shall be in accordance with the following principles:

(a) Provide maximum safety and protection to the traveling public through the orderly control of traffic movement[;]

(b) Minimize conflict points;

(c) Acquire appropriate sight distance on or to any class I, III or state maintained portion of class II highways;

(d) Maintain the serviceability of affected highways, which could require alterations to the existing highway;

(e) Monitor the design and construction of driveway entrances and exits; and

(f) Maintain compliance with RSA 236:13, effective July 1, 1971, as amended . . . .

N.H. DPP, *supra* § 1. Because we conclude that as a matter of law the board erred in deciding that the policy prong was satisfied, we do not address the unnecessary hardship prong.

The board determined that the policy prong compels the DOT

to make a specific determination as to whether the proposed driveway presents a specific safety problem in order for the State to conclude that the requested exception is not consistent with the Purpose clause of the [Driveway Permit Policy]. Essentially in order to deny the permit on safety grounds, the [DOT] is required to make specific findings as to why the proposed driveway is inconsistent with the purpose and intent of the [Driveway Permit Policy] as set forth in the "Purpose" section.

The board determined that the policy prong was conclusively established because (1) the DOT conceded that there was no specific safety concern implicated by the proposed driveway, (2) the hearings examiner failed to cite specific evidence indicating that the proposed driveway would be inconsistent with the "purpose" section, and (3) the record demonstrated that no specific safety concern was involved in the denial of the requested permit, other than the three driveway rule, in and of itself. The board essentially faulted the DOT for failing to present any evidence, or make any specific findings that evidence on the record established, that the respondent's proposed driveway would create a specific safety issue in conflict with the stated purpose of the Driveway Permit Policy. We conclude, however, that although the policy prong requires consideration of the specific circumstances presented by a particular proposed driveway, the board erroneously placed the burden of proof upon the DOT to establish the absence of specific safety concerns.

The three driveway rule was designed to minimize the aggregate impact of multiple access points along a State highway, without regard for the

particular safety impact that may or may not be created by any individual proposed driveway. Developers are required to construct an internal road access system when possible, rather than burden the State highway system and threaten the safety of the traveling public with more than three driveways for each subdivision tract. *See* N.H. DPP, *supra* § 8(c). The unusual conditions exception, however, is designed to provide relief from the presumptive three driveway limit when particular, distinct characteristics of the land warrant it, and unlike the three driveway rule itself, requires the DOT to consider the distinct factual circumstances of a case. The burden of presenting evidence and establishing both prongs of the exception, however, properly lies with the permit applicant. *Cf. Harrington v. Town of Warner*, 152 N.H. 74, 77 (2005) (landowner bears burden of establishing certain factors to obtain variance from zoning ordinance).

In this case, no one disputes the board's statement that the record fails to exhibit any evidence of specific safety concerns pertaining to the proposed driveway. The board erred, however, by requiring the DOT, in the first instance, to present such evidence. It is the respondent who sought an exception from the three driveway rule, and the burden remained with him to establish all requirements to warrant the grant of an exception. The respondent makes no suggestion that he submitted any evidence to establish that his proposed driveway would satisfy the concerns identified in the policy prong. Accordingly, without demonstrable facts supporting both prongs of the unusual conditions exception, the DOT may rely upon the generalized safety concerns underlying the three driveway rule to deny the respondent's permit application.

In sum, we conclude that the three driveway rule is a valid exercise of administrative rule-making authority granted to the DOT. We further conclude that the board erroneously compelled the DOT to grant the respondent's driveway permit application under the exception to the three driveway rule. Accordingly, we reverse the decision of the board.

*Reversed.*

NADEAU, DALIANIS, DUGGAN and GALWAY, JJ., concurred.