NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Transportation Appeals Board
No. 2015-0471


APPEAL OF JAMES G. BOYLE, AS TRUSTEE OF THE 150 GREENLEAF
AVENUE REALTY TRUST
(New Hampshire Transportation Appeals Board)

Argued: June 14, 2016
Opinion Issued: September 20, 2016


Law Offices of John Kuzinevich, of Duxbury, Massachusetts (John Kuzinevich on the brief and orally), for the petitioner.


Joseph A. Foster, attorney general (John J. Conforti, assistant attorney general, on the brief and orally), for the New Hampshire Department of Transportation.


BASSETT, J. The petitioner, James G. Boyle, as trustee of the 150 Greenleaf Avenue Realty Trust, appeals a decision of the New Hampshire Transportation Appeals Board (TAB) affirming the denial of his application for a permit to construct a driveway onto a state highway. The TAB based its decision upon sections 7(a) and 7(e) of the New Hampshire Department of Transportation's (DOT) "Policy for the Permitting of Driveways and Other Accesses to the State Highway System." See Policy for the Permitting of Driveways and Other Accesses to the State Highway System (N.H. DOT declaratory ruling no. 2000–01; issued March 10, 2000) (hereinafter referred to

and cited as the "Driveway Policy" or "N.H. Driveway Policy"). Section 7(a) of the Driveway Policy states that a "driveway construction permit shall be issued if the application and supporting information demonstrates that the safety of the traveling public can be adequately protected." N.H. Driveway Policy § 7(a) (emphases added). By contrast, section 7(e) of the Driveway Policy provides that a "driveway permit shall be denied if the proposed driveway will cause an unreasonable hazard to the traveling public." Id. § 7(e) (emphases added). Here, although the TAB concluded that the petitioner's proposed driveway would adequately protect the safety of the traveling public, because it also determined that there was sufficient support for the hearings examiner's conclusion that the proposed driveway would cause an unreasonable hazard to the traveling public, it upheld the hearings examiner's denial of the petitioner's permit application.

On appeal, the petitioner challenges the finding of an unreasonable hazard, arguing that it is impossible for a driveway to adequately protect the safety of the traveling public and simultaneously cause an unreasonable hazard to the traveling public. Thus, the petitioner asserts that the TAB erred when, after concluding that the proposed driveway would adequately protect the safety of the traveling public — a determination that has not been appealed — it affirmed the denial of his permit application. We agree with the petitioner, and, therefore, reverse.

The pertinent facts follow. The petitioner owns a 13-acre parcel of land, on which he operates an automobile dealership. The parcel is located in Portsmouth at the intersection of the US Route 1 Bypass and Greenleaf Avenue. It has over 800 feet of frontage on the Bypass. Currently, the parcel has access to the Bypass only by way of Greenleaf Avenue. Thus, in 2010, as part of a plan to add a second automobile dealership to the parcel, the petitioner filed an application with the DOT for a permit to construct a driveway with direct access to the Bypass. The petitioner wanted to use both his existing Bypass access and the proposed driveway as entrances and exits for the current and proposed dealerships.

In 2011, the District Engineer, Douglas DePorter, denied the petitioner's permit application. DePorter explained that the "reason for the denial included the fact that the [petitioner] has historically had access to [the] Route 1 By-Pass via Greenleaf Avenue," and that the "requested direct access to [the] US Route 1 Bypass would introduce a new conflict point along a highly traveled roadway." According to DePorter, the access by way of Greenleaf Avenue is "a safer alternative" than the proposed driveway because Greenleaf Avenue "consists of lower traffic volumes and lower speeds, with the added benefit of a traffic signal to access [the] Route 1 By-Pass."

The petitioner appealed to the DOT commissioner. Pursuant to New Hampshire Administrative Rule, Tra 202.01(a), the commissioner appointed a

hearings examiner to adjudicate the appeal. The hearings examiner upheld the denial of the petitioner's permit application, concluding that the "denial is in keeping with the purpose" of the Driveway Policy: to "maximize safety and . . . minimize conflict points." She also observed that "there would likely be a different discussion" had the petitioner been "landlocked" with no access to the Bypass.

The petitioner appealed to the TAB. In its decision, the TAB referenced sections 7(a) and 7(e) of the Driveway Policy, noting that, although DePorter had testified before the hearings examiner that "the proposed driveway provided adequate safety to the traveling public," he also testified that "the proposed driveway posed an unreasonable hazard in light of the existing access the [petitioner's] property has on Greenleaf Avenue." See N.H. Driveway Policy § 7(a), (e). Observing that it "is hard to envision . . . that the traveling public can simultaneously be adequately protected and yet somehow be subject to unreasonable hazard by virtue of this particular driveway permit," the TAB concluded that the petitioner "need not show that the proposed driveway provide[s] maximum safety," but rather only that the "safety of the traveling public can be adequately protected." The TAB determined that the petitioner met his "burden of establishing that the traveling public can be adequately protected." It then remanded the matter for the hearings examiner to determine whether, "taking into account the relative impact on the traveling public of the existing and proposed access," the petitioner's permit application for the proposed driveway should be denied because the proposed driveway would cause an "unreasonable hazard."

Upon remand, the hearings examiner determined that the proposed driveway would "create[] an unreasonable hazard for the traveling public." The hearings examiner explained that the proposed driveway would "add[] additional conflict points to an already busy State highway, fail[] to remove or improve existing conflict points, fail[] to remove or improve the existing driveway, and in general, decreas[e] safety to the overall highway system."

The petitioner again appealed to the TAB. The TAB observed that it "is seemingly nonsensical that simultaneously with" finding that the proposed driveway would adequately protect the safety of the traveling public, the DOT "could also find that the proposed driveway somehow constitutes an unreasonable hazard to the traveling public." The TAB also stated:

> The Board is sympathetic to the predicament faced by [the petitioner]. [The petitioner] seeks to expand a business and to do so in a way that adds a driveway with direct access onto a highway seemingly better suited to handle traffic than the current Greenleaf Avenue. On the surface the design of the driveway appears to flow with existing traffic patterns and the additional vehicles entering onto the state highway do not appear to create any hazard beyond

3

that which is generally a part of a growing population. In all respects [the petitioner's] request for the driveway seems reasonable.

Notwithstanding these comments, the TAB upheld the hearings examiner's conclusion that the proposed driveway would cause an unreasonable hazard to the traveling public. The TAB explained that, given the hearings examiner's findings regarding an unreasonable hazard, it could not conclude that the denial of the permit application was "arbitrary, capricious, unlawful, or unreasonable." This appeal followed.

On appeal, the petitioner challenges the finding that the proposed driveway would cause an unreasonable hazard, and asserts that it is legally and factually "impossible for something to simultaneously be adequately safe and an unreasonable hazard." The petitioner also argues that, given that the DOT has not appealed the TAB's conclusion that the proposed driveway would adequately protect the safety of the traveling public, the DOT is required, under section 7(a) of the Driveway Policy, to issue a permit for the proposed driveway. In response, the DOT argues that section 7(e) of the Driveway Policy covers broader concerns than section 7(a), and, thus, the two sections are not in conflict. According to the DOT, accepting the petitioner's position would render "superfluous" section 7(e) of the Policy. The DOT also argues that, when read as a whole, the Driveway Policy "does not require issuance of a permit solely on a showing of adequate protection." Finally, the DOT asserts that its interpretation and application of the Driveway Policy should be granted deference, especially in light of the "extensive factual findings" made by the hearings examiner.

The initial question that we must answer is whether, under the Driveway Policy, a proposed driveway can adequately protect the safety of the traveling public and simultaneously cause an unreasonable hazard to the traveling public. RSA chapter 541 governs our review of the TAB decision. See RSA 21-L:18 (2012); RSA 541:2 (2007). Pursuant to RSA 541:13 (2007), a party seeking to set aside a decision of the TAB has the burden of demonstrating that the decision is "clearly unreasonable or unlawful." The TAB decision will not be "set aside or vacated except for errors of law," unless we are "satisfied, by a clear preponderance of the evidence," that the TAB decision "is unjust or unreasonable." RSA 541:13. The hearings examiner's findings of fact are presumed prima facie lawful and reasonable, id., and we review rulings on issues of law de novo, see Appeal of Hillsborough County Nursing Home, 166 N.H. 731, 733 (2014).

Resolving this threshold question requires statutory and regulatory interpretation. "We use the same principles of construction in interpreting administrative rules as we use with statutes." Bovaird v. N.H. Dep't of Admin. Servs., 166 N.H. 755, 758 (2014) (quotation omitted). We note that we have

4

treated the Driveway Policy in the same manner as an administrative rule.  See Appeal of N.H. Dep't of Transportation, 152 N.H. 565, 569-76 (2005).  "When construing statutes and administrative regulations, we first examine the language used, and, where possible, we ascribe the plain and ordinary meanings to words used."  Bovaird, 166 N.H. at 758 (quotation omitted).  "Words and phrases in a statute are construed according to the common and approved usage of the language unless from the statute it appears that a different meaning was intended."  Id. at 759 (quotation omitted).  "Additionally, we interpret disputed language of a statute or regulation in the context of the overall statutory or regulatory scheme and not in isolation."  Id. (quotation omitted).  "We seek to effectuate the overall legislative purpose and to avoid an absurd or unjust result."  Id. (quotation omitted).

The DOT has "broad power to regulate driveways and other means of access to State highways and has made it unlawful for anyone to construct or alter any entrance onto a State highway without complying with the terms of a permit obtained from the DOT."  Appeal of N.H. Dep't of Transportation, 152 N.H. at 568 (quotation and brackets omitted); see RSA 236:13 (Supp. 2015).  RSA 236:13 "requires a person to obtain a permit from the DOT before constructing driveway access to a class I or class III highway or to the State-maintained portion of a class II highway," which includes the Bypass.  Appeal of N.H. Dep't of Transportation, 152 N.H. at 568; see RSA 236:13, I-II.  Because RSA 236:13 merely "provides the DOT with baseline parameters to consider when determining whether and under what conditions to grant such a permit," the DOT has the authority to adopt rules to "fill in details to effectuate the purpose of the statute."  Appeal of N.H. Dep't of Transportation, 152 N.H. at 568-69, 571 (quotation omitted).

In March 2000, the DOT adopted the Driveway Policy.  It provides that the purpose of the driveway permitting process is to "[p]rovide maximum safety and protection to the traveling public through the orderly control of traffic movement," maintain "the serviceability of affected highways," and "[m]inimize conflict points."  N.H. Driveway Policy § 1.

In this case, the TAB concluded that the petitioner's proposed driveway would adequately protect the safety of the traveling public, yet also found there to be sufficient support for the hearings examiner's conclusion that the proposed driveway would cause an unreasonable hazard to the traveling public.  Whether these two conclusions can coexist turns on the specific language of the Driveway Policy.  We, therefore, examine the terms "safety" and "unreasonable hazard" as used in sections 7(a) and 7(e).  Because neither "safety" nor "unreasonable hazard" is defined in the Driveway Policy or in RSA 236:13, we look to the terms' "common usage, using the dictionary for guidance."  K.L.N. Construction Co. v. Town of Pelham, 167 N.H. 180, 185 (2014).

5

Webster's Third New International Dictionary defines "safe," in pertinent part, as "freed from harm, injury, or risk" and "affording protection from danger." Webster's Third New International Dictionary 1998 (unabridged ed. 2002). Black's Law Dictionary defines "safe" as "[n]ot exposed to danger; not causing danger." Black's Law Dictionary 1536 (10th ed. 2014).

By contrast, Webster's Third New International Dictionary defines a "hazard" as "a possible source of peril, danger, duress, or difficulty." Webster's Third New International Dictionary 1041 (unabridged ed. 2002). Black's Law Dictionary provides that a "hazard" is a "[d]anger or peril; esp[ecially], a factor contributing to a peril." Black's Law Dictionary 834 (10th ed. 2014). "[U]nreasonable" is defined as "exceeding the bounds of reason or moderation." Webster's Third New International Dictionary 2507 (unabridged ed. 2002); see also Black's Law Dictionary 1772 (10th ed. 2014) (defining "unreasonable" as "[n]ot guided by reason; irrational or capricious"). Accordingly, we interpret an "unreasonable hazard" — as that term is used in the Driveway Policy — to be a peril that is excessively dangerous.

Thus, a proposed driveway cannot adequately protect the safety of the traveling public and, at the same time, create an unreasonable hazard. Therefore, the TAB erred when, after concluding that the petitioner had met his burden of demonstrating that the proposed driveway would adequately protect the safety of the traveling public, it, nevertheless, upheld the hearings examiner's conclusion that the proposed driveway would also cause an unreasonable hazard to the traveling public. See Appeal of Lemire-Courville Associates, 127 N.H. 21, 32 (1985) (explaining that "contradictory findings on material issues, made on the basis of a given evidentiary record, are necessarily capricious and insufficient to support a judgment").

In this case, under the Driveway Policy, the findings compel incompatible outcomes: the driveway permit "shall be issued" because "the safety of the traveling public can be adequately protected," and it "shall be denied" because the "proposed driveway will cause an unreasonable hazard to the traveling public." N.H. Driveway Policy § 7(a), (e) (emphases added); see In the Matter of Bazemore & Jack, 153 N.H. 351, 354 (2006) ("It is a general rule of statutory construction that . . . the word 'shall' makes enforcement of a provision mandatory."). Thus, logically, one of these mandatory outcomes must yield.

Here, it is significant that the DOT has not appealed the finding that the proposed driveway will adequately protect the safety of the traveling public. Rather, the DOT argues only that the application must be denied because, under section 7(e), the proposed driveway will cause an unreasonable hazard to the traveling public. Given that the two findings are mutually exclusive, and that the DOT has not challenged the finding concerning safety, we conclude that the finding regarding an unreasonable hazard cannot stand. Accordingly, we reverse the TAB decision.

We need not address the DOT's remaining arguments because they rebut assertions made by the petitioner that we have not discussed.  See State v. Kardonsky, 169 N.H. ___, ___ (decided June 14, 2016).  Finally, if the DOT disagrees with our interpretation of the Driveway Policy, it is free to revise the Policy.

Reversed.

DALIANIS, C.J., and HICKS, CONBOY, and LYNN, JJ., concurred.