Liquor Commission
No. 2002-507

APPEAL OF BALDOUMAS ENTERPRISES, INC.
(D/B/A SPARKY'S AMERICAN CAFE)
(New Hampshire State Liquor Commission)

Argued: May 14, 2003
Opinion Issued: August 1, 2003

*Shaines & McEachern, P.A.*, of Portsmouth (*Robert A. Shaines* and *Christopher R. Burns* on the brief, and *Mr. Shaines* orally), for the petitioner.

*Peter W. Heed*, attorney general (*Andrew B. Livernois*, assistant attorney general, on the brief and orally), for the State.

DUGGAN, J. The petitioner, Baldoumas Enterprises, Inc., appeals an order of the New Hampshire State Liquor Commission (commission) suspending the petitioner's liquor license and imposing a $2,500 fine for the sale of liquor to an intoxicated person. RSA 179:5, I (2002). We affirm.

At approximately 3:10 p.m. on March 4, 2002, Rebecca R. Esposito entered Sparky's American Café (Sparky's), which is owned and operated by the petitioner. According to the bartender, Nicole D. Brusso, Esposito showed no signs of intoxication when she ordered a White Russian, consisting of vodka, Kahlua and milk. Twenty minutes later, Esposito ordered a B-52 shot, consisting of Bailey's Irish Cream, Kahlua and Grand Marnier.

At approximately 4:00 p.m., Esposito ordered a second B-52 shot. Brusso asked Esposito if she was driving. Esposito responded that she would not be driving because she was taking a limousine. Brusso served Esposito the second B-52. Fifteen minutes later, Brusso removed the remainder of Esposito's White Russian because Esposito had begun to talk loudly with other patrons.

At approximately 4:30 p.m., Esposito paid for her drinks and left Sparky's. Glen Bosworth, another patron, followed Esposito "to see how she was getting home." After briefly talking to Bosworth in the parking lot, Esposito approached her sport utility vehicle. Bosworth offered to call a taxicab for Esposito or give her a ride, but she refused. She entered her vehicle and drove away.

At approximately 4:49 p.m., Esposito's vehicle struck a car driven by Donald Stuart, causing him severe physical injuries. At the scene of the accident, Esposito displayed several signs of intoxication. Officer Timothy McCain, the first police officer at the scene, observed Esposito shouting, "Look at me, I am drunk, I caused this." McCain also smelled a strong odor of alcohol on Esposito's breath. Sergeant Glenn Pafford, the second police officer to arrive at the scene, found Esposito lying in a fetal position under a tree. As he approached Esposito, she stood up, was unsteady on her feet, was hysterical, had bloodshot eyes and had a noticeable odor of alcohol on her breath. Esposito told the officers that she had consumed four beers at home before going to Sparky's. Esposito's blood test taken at 5:55 p.m. showed an alcohol concentration of .27g/100ml. and the blood test taken at 7:00 p.m. was .25g/100ml. Shortly thereafter, the commission cited Sparky's for serving alcohol to an intoxicated person in violation of RSA 179:5, I. After a hearing, the commission found that Sparky's had violated RSA 179:5, I. The petitioner's petition for rehearing was denied.

On appeal, the petitioner argues that the commission erred in three respects: first, the commission erroneously construed RSA 179:5, I, as imposing strict liability for the sale of liquor to an intoxicated person; second, there was insufficient evidence that Brusso knew Esposito was intoxicated when she was served; and finally, the commission erred by failing to provide an adequate basis for its findings.

This appeal is governed by RSA 541:13 (Supp. 2002). "Accordingly, we will reverse the agency only if it made an error of law or if we are satisfied, by a clear preponderance of the evidence, that the agency's order was unjust or unreasonable." *Appeal of Northeast Rehabilitation Hospital,* 149 N.H. 83, 84-85 (2003).

"In statutory interpretation, this court is the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole." *John A. Cookson Co. v. N.H. Ball Bearings,* 147 N.H. 352, 357

(2001). "When construing the meaning of a statute, we first examine the language found in the statute, and where possible, we ascribe the plain and ordinary meanings to words used." *Bohan v. Ritzo*, 141 N.H. 210, 213 (1996). It is not the function of the courts to add language to a statute. *Id.* at 213.

▮ The commission found that Sparky's violated RSA 179:5, I, which provides in part:

> No licensee, salesperson . . . nor any other person, shall sell or give away or cause or allow or procure to be sold, delivered or given away any liquor or beverage to a person under the age of 21 or to an intoxicated individual.

The plain language of RSA 179:5, I, prohibits the sale of any liquor to an intoxicated individual. There is no limiting or qualifying language. Similarly, RSA 179:5, I, prohibits the sale of any liquor to persons under the age of twenty-one. RSA 179:7, however, creates an affirmative defense where "the sale was made in good faith relying upon such written representation and appearance in the reasonable belief that the person was actually 21 years of age or over." There is no comparable affirmative defense for the service of liquor to an intoxicated individual. If the legislature had intended to create a defense for the service of liquor to an intoxicated individual, "it could easily have drafted the statute to do so. The legislature did not do so here, and we will not interpret the statute to expand the scope of the terms used." *Bohan*, 141 N.H. at 214.

▮ The petitioner urges us to interpret RSA 179:5, I, in light of RSA 507-F:4 (1997), which provides in part:

> I. A defendant who negligently serves alcoholic beverages to a minor or to an intoxicated person is liable for resulting damages, subject to the provisions of this chapter.
>
> . . . .
>
> VII. A defendant is not under a duty to recognize signs of a person's intoxication other than those normally associated with the consumption of alcoholic beverages . . . .

RSA 507-F:4 only creates "liab[ility] for resulting damages." This statute creates a civil cause of action for an injured party, whereas RSA 179:5 creates no civil cause of action. *Hickingbotham v. Burke*, 140 N.H. 28, 31 (1995); *see MacLeod v. Ball*, 140 N.H. 159 (1995); *see also Douillard v. LMR, Inc.*, 740 N.E.2d 618 (Mass. 2001) (civil action for negligent service requires evidence that intoxication apparent at time of service);

*Beaulieu v. The Aube Corp.*, 796 A.2d 683 (Me. 2002) (civil action under Maine Liquor Liability Act requires evidence of negligence). Because this case is an enforcement proceeding before the commission and not a civil claim for damages, RSA 507-F:4 is not applicable. Moreover, to the extent that RSA 507-F:4 is relevant in determining the scope of RSA 179:5, I, it demonstrates that when the legislature intends to create liability for negligence instead of strict liability, it knows how to do so.

Our reading of RSA 179:5, I, is consistent with statutes from other States regulating the sale of liquor. Where state law does not impose strict liability, it is because the plain language of the statute does not create strict liability. For example, in Maine, a licensee may not knowingly sell liquor to "a visibly intoxicated person." Me. Rev. Stat. Ann. tit 28-A § 2081(1)(C) (West Supp. 2002); *cf.* Iowa Code § 123.49 (2001); 235 Ill. Comp. Stat. 5/6-16 (a) (Supp. 2003) (where the plain language is similar to RSA 179:5, I). Similarly, California prohibits the sale of any alcoholic beverage "to an obviously intoxicated person." Cal. Bus. & Prof. Code § 25602 (West Supp. 2002).

Notwithstanding the plain language of RSA 179:5, I, the petitioner argues that other States, such as Massachusetts, impose liability only when the licensee negligently serves an individual. However, the petitioner's reliance upon *Douillard* and *Vickowski v. Polish American Citizen Club*, 664 N.E.2d 429 (Mass. 1996), is misplaced. In both cases, liability arose out of a common law civil cause of action for negligent service of alcohol, not a statutory violation. Furthermore, the enforcement provision in Massachusetts explicitly incorporates the civil damages provision, whereas in New Hampshire, RSA 179:5, I, makes no reference to RSA 507-F:4. *Compare* Mass. Gen. Laws ch. 138, §§ 64A, 69 *with* RSA 179:5, I, *and* RSA 507-F:4.

While we recognize that strict liability imposes an onerous burden upon licensees, the "[c]ourts can neither ignore the plain language of the legislation nor add words which the lawmakers did not see fit to include." *Bohan v. Ritzo*, 141 N.H. at 213. Thus, "strict liability is available only where the Legislature has provided for it or in those situations where the common law of this state has imposed such liability and the Legislature has not seen fit to change it." *Bruzga v. PMR Architects*, 141 N.H. 756, 761 (1997) (quotation omitted). Here, because the legislature imposed the burden by creating strict liability, it is the legislature, not the courts, which must decide whether to lessen the burden. *Bohan v. Ritzo*, 141 N.H. at 213.

■ Second, the petitioner claims that there was insufficient evidence that Brusso knew that Esposito was intoxicated when she was served.

Because we hold that RSA 179:5, I, creates a strict liability offense, it is irrelevant whether Brusso knew Esposito was intoxicated when she was served.

Finally, the petitioner argues in its brief that the commission erred by failing to provide an adequate basis for its findings. This argument, however, was not raised in the petition for rehearing filed with the commission or in the notice of appeal and thus is not preserved for our review. RSA 541:4 (1997); *State v. Blair*, 143 N.H. 669, 672 (1999).

*Affirmed.*

BROCK, C.J., and BRODERICK, NADEAU and DALIANIS, JJ., concurred.