Liquor Commission
No. 2006-122

APPEAL OF OMEGA ENTERTAINMENT, LLC
(New Hampshire State Liquor Commission)

Argued: February 22, 2007
Opinion Issued: October 16, 2007

*Jeffco, Starbranch & Soldati,* of Portsmouth (*Harry N. Starbranch, Jr.* on the brief and orally), for the petitioner.

*Kelly A. Ayotte,* attorney general (*Mary E. Maloney,* assistant attorney general, on the brief and orally), for the State.

BRODERICK, C.J. The petitioner, Omega Entertainment, LLC (Omega), appeals a decision of the New Hampshire State Liquor Commission (commission) denying its application for renewal of its liquor license. We affirm.

I

The record supports the following. On December 1, 2005, Omega applied for renewal of its liquor license at 494 Elm Street in Manchester (Club Omega). At the commission's meeting on December 7, Eddie Edwards, Chief of the commission's Bureau of Enforcement (bureau), recommended denial of the renewal application. Based upon the bureau's presentation, which raised concerns with Omega's "management, violence on or near the premises, record of violations and public safety," the commission denied Omega's renewal application on December 9.

Omega appealed the commission's denial; orders of notice for a full adjudicatory hearing on the license renewal were issued on December 27, and the hearing was scheduled for January 18, 2006. Subsequent to both parties conducting discovery and exchanging witness and exhibit lists, Omega filed an assented-to motion to continue the hearing in order to accommodate more witnesses, offers of proof, and cross-examination. The commission rescheduled and conducted the adjudicatory hearing on January 25-26. Both parties submitted requests for findings of fact and rulings of law. Omega also filed a motion to vacate the commission's

December 9 denial of its renewal application, which the commission denied.

On February 8, 2006, the commission affirmed its denial of Omega's renewal application, finding that the bureau had satisfied its burden of proof by a preponderance of the evidence. Omega moved for rehearing, alleging a number of errors in the commission's decision. Based upon a review of the motion for rehearing, the commission issued an interim order (Interim Order I) on February 16 to correct two errors in its February 8 decision. Interim Order I clarified that Omega's liquor license would expire at 5:00 p.m. on February 17, 2006. The commission issued a second interim order (Interim Order II) on February 24, and an amended second interim order (Amended Interim Order II) on February 27, correcting additional errors, and "reinstat[ing] Omega's license effective ... February 17 ... [and] extend[ing] [the license] until the Commission has taken final action on the Motion for Rehearing with the applicable appeal period. If the Commission's final action is unfavorable, the license shall not expire until the last day for seeking judicial review."

On March 13, 2006, Omega filed an amended motion for rehearing, which incorporated by reference its earlier motion for rehearing. In response, the commission scheduled a public hearing for April 5. During the public session, the commission affirmed its decision of February 8, and voted to deny Omega's motion and amended motion for rehearing. This appeal followed.

## II

Pursuant to RSA chapter 541 (2007), our review of this appeal from an administrative agency's decision is governed by RSA 541:13:

> Upon the hearing the burden of proof shall be upon the party seeking to set aside any order or decision of the commission to show that the same is clearly unreasonable or unlawful, and all findings of the commission upon all questions of fact properly before it shall be deemed to be prima facie lawful and reasonable; and the order or decision appealed from shall not be set aside or vacated except for errors of law, unless the court is satisfied, by a clear preponderance of the evidence before it, that such order is unjust or unreasonable.

*See Appeal of Baldoumas Enters.*, 149 N.H. 736, 737 (2003).

On appeal, Omega argues that the commission should be ordered to renew its liquor license due to the commission's failure to follow numerous statutes and procedural rules. In its notice of appeal, Omega presented twenty-six questions for review. We address, however, only the seventeen

questions it chose to brief. *See Colla v. Town of Hanover*, 153 N.H. 206, 210 (2006) (issue waived when raised in notice of appeal, but not briefed).

## III

Omega alleges several violations of the Right-to-Know Law, RSA ch. 91-A (2001 & Supp. 2006). At oral argument, counsel for Omega stated that its Right-to-Know Law claims had not been raised during the course of the liquor commission proceedings, that they were first raised in Omega's notice of appeal, and that they had not been preserved by "prior counsel." We agree that, as such, the claims would not be preserved for our review. *See State v. Blackmer*, 149 N.H. 47, 48 (2003). Omega contended, however, that we should review them under our plain error rule, which allows us to consider an error that affects substantial rights even though not raised by either party. *See State v. Taylor*, 152 N.H. 719, 720 (2005); SUP. CT. R. 16-A.

Under our plain error rule, we consider the following four elements: (1) there must be an error; (2) the error must be plain; (3) the error must affect substantial rights; and (4) the error must seriously affect the fairness, integrity or public reputation of judicial proceedings. *Taylor*, 152 N.H. at 720. We note that whether our plain error rule applies to proceedings of the liquor commission is an open question. However, even assuming that the rule does apply to such agency proceedings, and that "substantial rights" of Omega were at stake, its use should be limited to those circumstances in which a miscarriage of justice would otherwise result. *See State v. MacInnes*, 151 N.H. 732, 736-37 (2005). In this case, whatever procedural errors the liquor commission may have committed that implicated the Right-to-Know Law were subsequently corrected. The commission's Interim Order I, Interim Order II, and Amended Interim Order II were all designed to correct earlier alleged errors. The public session and full deliberation on April 5, subsequent to notice to the public and Omega, addressed the commission's earlier failure to deliberate in public both on Omega's motion to vacate and subsequent to the January 25-26, 2006 adjudicatory hearing. Given the actions of the commission to rectify earlier errors, we cannot say that any error under the Right-to-Know Law seriously affected the fairness, integrity, or public reputation of the proceedings.

## IV

Omega alleges several violations of its right to due process. It first contends that the commission failed to provide proper notice "prior to the December 7, 2005 and March 10, 2006 hearings." Because nothing in the record indicates that a hearing occurred on March 10, 2006, we assume

that Omega meant to refer to the meeting of the commission scheduled for March 20, 2006, at which it intended to consider Omega's motion for rehearing. In its brief, the commission concedes that its notice of the March 20 meeting did not comply with the notice requirements of either the commission's rules or RSA 91-A:2, II. The commission also notes, however, that upon receipt of Omega's objection, it continued the consideration of Omega's motion for rehearing until the commission's regularly-scheduled meeting of April 5, 2006. The record reflects timely notice of the April 5 meeting, and Omega does not claim error with regard to the conduct of the April 5 meeting. As we discuss the issue of notice of the December 7 meeting in our analysis in Section V, below, we need no further discussion of Omega's allegation of improper notice here.

Next, Omega alleges that "[t]here was a denial of due process generally by the Commission as the Commission consistently failed to abide by its published rules and the appropriate statutes designed to afford to a licensee a fair hearing." None of Omega's allegations, however, are supported by significant legal argument. Judicial review is not warranted for complaints regarding adverse rulings without developed legal argument, and neither passing reference to constitutional claims nor off-hand invocations of constitutional rights without support by legal argument or authority warrants extended consideration. See *Blackmer*, 149 N.H. at 49.

Assuming, arguendo, that Omega adequately developed its legal argument concerning its due process claims, we note that before we will evaluate a due process claim, Omega must show actual prejudice. See *McIntire v. Woodall*, 140 N.H. 228, 230 (1995). Omega repeatedly claims that it was prejudiced by the commission's procedural irregularities. In support of those claims, however, it points only to its inability to sell alcohol from February 17 to February 24, 2006. In its decision of February 8, 2006, the commission termed Omega's license as "officially expired," yet it "extend[ed]" the license for seven business days. In response to Omega's motion for rehearing, Interim Order I (dated February 16) clarified that Omega's liquor license would expire at 5:00 p.m. on February 17, 2006. Interim Order II reinstated Omega's license, effective February 17, and extended the license until the commission took final action on Omega's motion for rehearing and the applicable appeal period expired. Amended Interim Order II (dated February 27) noted that, if the commission's final action on Omega's motion for rehearing were unfavorable, the license would not expire until the last day for seeking judicial review. By the time Interim Order II issued on February 24, however, Omega had apparently not made alcohol sales for a full week.

Omega may have incurred some economic loss precipitated by a suspension of alcohol sales from February 17 to February 24. Our focus here, however, is whether the commission's procedural irregularities denied Omega's due process rights in either the adjudication of its application for license renewal, its motion for rehearing or appeal. The commission's actions in Interim Order II and Amended Interim Order II corrected its earlier error of ordering Omega's license to prematurely expire at 5:00 p.m. on February 17, 2006. The commission also made clear that, pursuant to RSA 541-A:30, I (2007), the license was extended until the commission took final action on Omega's motion for rehearing and, if the commission's final action was unfavorable, Omega's license would not expire until the last day for seeking judicial review. Consequently, we do not believe that Omega has made the necessary showing of material prejudice for it to prevail on its due process claim. "We will not set aside an agency's decision for a procedural irregularity . . . unless the complaining party shows material prejudice." *Appeal of Concord Natural Gas Corp.*, 121 N.H. 685, 691 (1981).

## V

Omega alleges specific procedural or substantive errors by the commission with regard to requested findings of fact submitted subsequent to the January 25-26, 2006 hearing.

Omega first contends that the commission's denial of the bureau's requested finding of fact #11 in its February 8, 2006 order was tantamount to a finding that there was no rational basis to deny the application for renewal of Omega's liquor license. Consequently, Omega argues that the commission should renew the license.

Omega's argument rests upon a faulty premise. The bureau's requested finding #11 states:

> That, considering the history of violations of statute and rule committed by the LLC operated under the immediate management control of Mr. George C. Maroun, the Bureau has substantial doubt that applicable state laws and commission rules will be followed if the license to operate the business known as Omega Entertainment LLC is renewed. Therefore we recommend there is a rational basis for the Commission to deny the pending license renewal application of Omega Entertainment LLC.

In its order of February 8, 2006, the commission neither granted nor denied the bureau's requested finding #11. Second, in Interim Order II,

dated February 24, 2006 (and affirmed in Amended Interim Order II, dated February 27, 2006), the commission explained that:

> certain Findings of Fact and Conclusions of Law were neither granted nor denied by the Commission [in its February 8 decision] because they involved opinions, confusing or conflicting statements, inapplicable laws or rules, or did not involve a Finding of Fact or Conclusion of Law, and are therefore **denied**.

Hence, we will not equate the commission's denial of the bureau's stated opinion, recommendation, or request for relief with a substantive finding of the converse.

Next, Omega contends that the commission violated RSA 541-A:35 by "failing to deliberate and make findings of fact and conclusions of law, separately stated, on Omega's [requests] 51, 52, 53, 55, 56, 63 and 65." The commission originally granted Omega's requested finding #55 in its order of February 8, 2006, but then denied it in its Interim Order II. The requested finding read:

> The information presented by the Bureau is not only inaccurate, but is exaggerated and is fueled by the campaign for Mayor of the City of Manchester which targeted Omega as the "whipping boy" for Mayor Guinta[']s campaign.

The commission noted that the initial grant of requested finding #55 was "clearly inconsistent with its decision" to deny Omega's application for renewal, and stated that its correction in Interim Order II was simply the "correcting [of] a scrivener's error." Omega has cited no authority, and we know of none, that would prohibit the commission from correcting such an error. Cf. *Blagbrough Family Realty Trust v. Town of Wilton*, 153 N.H. 234, 238-39 (2006) ("The statutory scheme [RSA chapter 677] is based upon the principle that the local board should have the first opportunity to pass upon any alleged errors in its decisions so that the court may have the benefit of the board's judgment in hearing the appeal."); *74 Cox St. v. City of Manchester*, 156 N.H. 228, 231 (2007) ("[M]unicipal boards, like courts, have the power to reverse themselves at any time prior to final decision if the interests of justice so require.").

■ In its order of February 8, 2006, the commission neither granted nor denied Omega's requested findings #51, 52, 53, 56, 63, and 65. In Interim Order II, dated February 24, 2006 (and affirmed in Amended Interim Order II, dated February 27, 2006), however, the commission denied these requested findings, giving the same explanation noted above concerning the bureau's requested finding #11.

RSA 541-A:35 (2007) states:

> A final decision or order adverse to a party in a contested case shall be in writing or stated in the record. A final decision shall include findings of fact and conclusions of law, separately stated. Findings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings. If, in accordance with agency rules, a party submitted proposed findings of fact, the decision shall include a ruling upon each proposed finding. Parties shall be notified either personally or by mail of any decision or order. Upon request, a copy of the decision or order shall be delivered or mailed promptly to each party and to a party's recognized representative.

Our review of the record reveals that the commission accomplished the statute's mandate in all respects. In its February 8, 2006 decision, the commission recited detailed "background information," summarized the course of the January 25-26, 2006 hearing, including procedures and witnesses, detailed its decision and the reasoning behind it, and included twelve findings of fact and five conclusions of law. The commission's decision also responded to the requested eleven findings of fact and conclusions of law submitted by the bureau, and the requested sixty-five findings of fact and conclusions of law submitted by Omega. We see no evidence, and Omega has offered none, that the commission failed to deliberate in this case. Moreover, we see nothing to support Omega's contention, pursuant to *Appeal of City of Nashua*, 138 N.H. 261, 263-64 (1994), that the commission's order should be vacated and remanded for a new hearing. Instead, "[o]ur review of the [commission's] decision ... reveals a thorough, well-documented analysis that does not comport with [Omega's] assertions. The [commission's] analysis of the information presented by the parties can in no way be characterized as a conclusory summary of the evidence .... In its decision, the board specifically identified strengths and weaknesses in the evidence, and it connected the evidence presented to its findings in every instance." *Id.* at 264.

Omega next contends that the commission's denial of Omega's requested finding #51 is evidence that the commission failed to recognize that its December 9, 2005 order contained no findings of fact, in violation of RSA 541-A:35's mandate for such findings. We disagree, as Omega's argument again rests upon a faulty premise.

The commission's order of December 9, 2005, contained no findings of fact. Omega's requested finding #51 stated:

> The Commission's Order dated December 9, 2005 failed to contain findings of fact and conclusions of law, separately stated, to support the basis for its December 9, 2005 Order to deny ... Omega's renewal application contrary to RSA 541-A:35.

As noted above, the commission neither granted nor denied Omega's requested finding #51 in its February 8, 2006 decision. The commission later denied requested finding #51.

The commission's order of December 9, 2005 was not a "final decision or order adverse to a party in a contested case," RSA 541-A:35, that required findings of fact. As explained in the commission's decision of February 8, 2006, the December 2005 order provided Omega with the opportunity to request a full adjudicatory hearing before the commission, which Omega did. Consequently, RSA 541-A:35 was inapplicable to the commission's December 9 order, and we find no error in the commission's denial of Omega's requested finding #51.

Omega contends that the commission's denial of Omega's requested finding #52 "shows the Commission's unwillingness to consider all relevant evidence offered by Omega." Omega's requested finding #52 stated:

> The Commission should take notice of its own records which show that not one restaurant/lounge licensee has been denied a renewal of its liquor license during the past two years and several other restaurant/lounge licensees that have had [their] liquor license[s] suspended have subsequently been granted renewal of [their] liquor license[s] during the past two years, the same time period as Omega's operation.

As noted above, the commission neither granted nor denied Omega's requested finding #52 in its February 8, 2006 decision. The commission later denied requested finding #52.

RSA 541-A:33 (2007) provides, in pertinent part:

> II. The rules of evidence shall not apply in adjudicative proceedings. Any oral or documentary evidence may be received; but the presiding officer may exclude irrelevant, immaterial or unduly repetitious evidence. ...
>
> . . . .
>
> V. Official notice may be taken of any one or more of the following: ... [t]he record of other proceedings before the agency.

■ We agree with the commission that, while RSA 541-A:33 permits the commission to take official notice of the record of other proceedings before it, the statute does not require that such notice be taken. As such, it is within the discretion of the commission whether or not to take official notice of its own records. Further, Omega's requested finding #52 would have the commission take official notice of two full years of records concerning liquor license renewal applications and suspensions at other establishments. Even if we assume that such notice would confirm what Omega contended—that no licensee's renewal application had been denied, and that certain licensees had been granted license renewals subsequent to license suspensions, over the previous two years—Omega has not shown that such information was necessarily relevant to the adjudication of its own renewal application. Absent such a showing, we cannot say that the commission's denial of Omega's requested finding #52 either violated RSA 541-A:33 or was an unsustainable exercise of its discretion. *Cf. State v. Cox,* 133 N.H. 261, 265-66 (1990) (trial court's denial of defendant's request that it take judicial notice reviewed for unsustainable exercise of discretion); *see State v. Lambert,* 147 N.H. 295, 296 (2001) (explaining "unsustainable exercise of discretion" standard).

Next, Omega alleges that the commission's denial of Omega's requested findings #53 and #65 "shows that there was no rational deliberation process conducted by the Commission" because the requested findings simply restated what New Hampshire Administrative Rules, Liq 207.03 and 207.08 provide. Omega is correct that requested finding #53 quotes Rule 207.03(a) and that requested finding #65 accurately paraphrases Rule 207.08(a). As noted above, the commission neither granted nor denied Omega's requested findings #53 and #65 in its February 8, 2006 decision. The commission later denied both requested findings.

■ Omega has failed to recognize, however, that both Rules 207.03(a) and 207.08(a) pertain to petitions brought by the "governing body of any city or town . . . for the revocation of a liquor license located within that community." N.H. ADMIN. RULES, Liq 207.01. The instant case involves only Omega's application for renewal of its liquor license—there is no petition from the City of Manchester for the revocation of Omega's liquor license at issue. Pursuant to the plain meaning of the language of the administrative rules, the commission did not err in denying Omega's requested findings #53 and #65, as both findings involved rules inapplicable to an application for liquor license renewal. *See Appeal of N.H. Dep't of Transportation,* 152 N.H. 565, 574 (2005) ("In construing administrative rules, as in construing statutes, where possible, we ascribe the plain and ordinary meanings to words used." (brackets omitted)).

Omega next alleges that the commission's denial of Omega's renewal application "constitute[d] a revocation as set forth under the provisions of [Rule] 207.08," and thus the commission erred in failing to fulfill the requirements of Rules 207.03(a) and 207.08(b). For the reason just given, we disagree. Rules 207.03(a) and 207.08(a) are inapplicable here as there is no prerequisite petition from the City of Manchester for the revocation of Omega's liquor license at issue.

Omega also alleges that the commission's denial of Omega's requested finding #56 "shows that there was no rational deliberation process conducted by the Commission" because the record "clearly shows that the Bureau failed to give Omega proper notice of the December 7, 2005 meeting ... and that licensee George Maroun, Sr., Omega's Manager was told not to attend the ... meeting." Omega has again presented an argument based upon a faulty premise.

Pursuant to RSA 176:8 (2002) and RSA 541-A:29 (2007), the commission established procedures by which it processes an application for the renewal of a liquor license. Paragraph I of RSA 176:8 provides, in part:

> The [bureau] chief shall handle all license applications and shall make recommendations, in writing, to the commission, on whether to grant the license application. The commission shall then either grant or deny the request, stating its reasons in writing. An aggrieved applicant may appeal the commission's decision to the commission as a whole.

Paragraph II(a) of RSA 541-A:29 provides:

> Within a reasonable time ... after receipt of the application ... the [commission] shall ... [a]pprove or deny the application, in whole or in part, on the basis of *nonadjudicative* processes, if disposition of the application by the use of these processes is not precluded by any provision of law.

(Emphasis added.)

█ Subsequent to the denial of its application for license renewal, Omega appealed the decision to the commission as a whole, *see* RSA 176:8, I, by requesting an adjudicative hearing, *see* RSA 178:3, X (Supp. 2006); N.H. ADMIN. RULES, Liq 208.03(b). The record is clear that Omega received appropriate notice of the January 25-26, 2006 adjudicative hearing in the form of an order of notice from the commission. Omega has presented no authority, and we know of none, entitling it to formal notice and an adjudicative hearing at the initial stage of its license renewal application. *Cf.* N.H. ADMIN. RULES, Liq 205.11(a)-(g) & 205.12(a) (notice

requirements for adjudicative proceedings). Consequently, we disagree with Omega to the extent that it argues that the absence in the record of an order of notice for the December 7, 2005 meeting shows that the commission "failed to give Omega proper notice" of that meeting.

Further, we also disagree with Omega to the extent it argues that the bureau's response to its manager's inquiry either directed him not to attend the meeting or evidenced improper notice. Omega contends that "[p]rior to the [December 7, 2005 meeting] ... George Maroun, Sr., contacted the [bureau] to inquire as to whether his attendance was necessary at the ... meeting." First, it seems clear to us that Omega must have received some form of notice of the December 7 meeting, prompting it to have then made such an inquiry. More important, we disagree with Omega's characterization that the bureau told Maroun "not to attend the December 7, 2005 meeting." In response to Maroun's inquiry, the bureau's deputy chief left a telephone message at his residence, stating:

> This message is for George Maroun, Senior. This is Deputy Chief Avery with Liquor Enforcement. Um, you've left a voice mail message for me inquiring about attending that meeting on Wednesday. There's no need for you to attend that meeting. If it comes to a hearing, if the Commission decides to require a hearing before that license [is] renewed, then you'll be notified. Otherwise, there's no need for you to attend that meeting. Thank you. Bye.

While we agree that Deputy Chief Avery's message made clear that Maroun was not required to attend the December 7 meeting, we do not interpret it as a directive *not* to attend. Further, we note that the record shows that Omega was both present at the December 7 meeting and informed that, subsequent to the commission's denial of Omega's application for renewal of its liquor license, there would be a full adjudicative hearing on the matter. In sum, we find no error with regard to the commission's denial of Omega's requested finding #56.

## VI

Omega contends that the commission erred in its decision because the bureau failed to submit "a written [p]etition with its recommendations, in writing, as required by RSA 176:8 and evidence to support a revocation of its license as set forth under [New Hampshire Administrative Rules, Liq] 207.08(b)." It is unclear from Omega's brief if it is alleging error within the context of the December 7, 2005 nonadjudicatory meeting or the January 25-26 adjudicatory hearing. In either case, we find no error in the commission's actions.

■ RSA 176:8, I, provides, in pertinent part: "The [bureau] chief shall handle all license applications and shall make recommendations, in writing, to the commission, on whether to grant the license application." The statute makes no mention of a "written petition" and Omega cites no other authority in support of its contention except Rule 207.08(b). We have already explained, however, that Rule 207.08 pertains to a petition brought by the governing body of any city or town for the revocation of a liquor license located within that community. *See* N.H. ADMIN. RULES, Liq 207.01. The only "petition" at issue in this case is Omega's application for the renewal of its liquor license, *see* N.H. ADMIN. RULES, Liq 205.02(n) (defining "petition"). Rule 207.08 remains inapplicable to an application for liquor license renewal. Accordingly, there was no requirement for the bureau to file its own petition, and the commission's actions concerned the bureau's recommendations as to Omega's petition.

Further, our review of the record reveals that the bureau made a written recommendation to the commission regarding whether to grant Omega's license renewal application. The agenda for the December 7 meeting of the commission shows that the bureau made a written recommendation of "denial" with regard to the renewal application. While we concur with the commission's acknowledgment that the bureau's recommendation could have been more explanatory, we agree that the agenda's writing complied with the mandate of RSA 176:8, I, that it be "in writing." In the context of the January 25-26, 2006 adjudicatory hearing, the bureau submitted requested conclusions of law and eleven findings of fact in support of its written recommendation that the commission deny Omega's application for renewal of its liquor license.

Omega further contends that the commission violated RSA 541-A:30, II and III by denying the application for license renewal in the absence of: (1) a written petition from the bureau; (2) notice of the impending actions; and (3) an adjudicatory proceeding. We disagree. Prior to this case, we have not been presented with the need to construe RSA 541-A:30, II or III. In statutory interpretation, this court is the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole. *Baldoumas*, 149 N.H. at 737. When construing the meaning of a statute, we first examine the language found in the statute, and, where possible, we ascribe the plain and ordinary meanings to words used. *Id.* at 738.

■ RSA 541-A:30, III (2007) clearly applies only to the "immediate suspension of a license" and thus is inapplicable to the instant license renewal case.

RSA 541-A:30, II (2007) states:

> An agency shall not *revoke, suspend, modify, annul, withdraw, or amend* a license unless the agency first gives notice to the licensee of the facts or conduct upon which the agency intends to base its action, and gives the licensee an opportunity, through an adjudicative proceeding, to show compliance with all lawful requirements for the retention of the license.

(Emphasis added.) While the plain language does not include license "renewals," we need not decide whether RSA 541-A:30, II applies to a license renewal, as we have already addressed Omega's arguments concerning what the commission did or did not provide. Specifically, we concluded that there was no requirement for a petition from the commission in this license renewal case; that Omega received adequate notice of the December 7 meeting; that Omega received an adjudicative hearing, in accordance with RSA 176:8, I, RSA 178:3, X, and Rule 208.03(b); and that Omega received appropriate notice of the adjudicative hearing in the form of an order of notice from the commission. As previously described, both parties conducted discovery and exchanged witness and exhibit lists in advance of the adjudicative hearing. Thus, we see no violation of RSA 541-A:30, II.

## VII

Omega alleges that the commission erred because, contrary to RSA 541-A:31, VIII and RSA 541-A:33, V, its decision was based, not exclusively upon the evidence and matters officially noticed, but upon "mere allegations and conclusionary [*sic*] statements . . . innuendo and matters of opinion and political considerations." We note that, pursuant to the plain meaning of the statutory language, only the commission's findings of fact, and not its decision as a whole, are the focus of RSA 541-A:31, VIII (2007) ("Findings of fact shall be based exclusively on the evidence and on matters officially noticed in accordance with RSA 541-A:33, V."). In contrast, when making its overall decision, the commission is guided by RSA 541-A:33 (2007) and RSA 178:3, XI. RSA 541-A:33 provides, in part, that the rules of evidence shall not apply in adjudicative hearings; that any oral or documentary evidence may be received; and that the presiding officer may "exclude irrelevant, immaterial or unduly repetitious evidence." In addition, RSA 178:3, XI provides:

> There shall be no presumption that any liquor license shall be renewed. The commission shall review all license requests for renewal, and shall not renew any license unless the licensee meets all of the current requirements for the issuance of a license. The commission may consider the licensee's record of

> violations, the manner in which the licensee has operated during the term of the license, the effect of the license on the neighborhood or community, *and any other facts presented at the renewal hearing* in determining whether to renew the license.

(Emphasis added.) As such, we will consider Omega's argument as one challenging the sufficiency of the evidence supporting the commission's decision.

Mindful that our review is governed by RSA 541:13, we review Omega's sufficiency of the evidence claim as a matter of law, and uphold the findings and rulings of the commission unless they are lacking in evidential support or tainted by error of law. *See ElderTrust of Fla. v. Town of Epsom*, 154 N.H. 693, 704 (2007). We accord considerable weight to the commission's judgments on the credibility of witnesses and the weight to be given testimony. *See id.*

During the course of the January 25-26, 2006 adjudicatory hearing, the commission heard live testimony from witnesses for both parties and further testimony by way of offers of proof. Both parties were afforded the opportunity to cross-examine all witnesses. The bureau presented the testimony of the mayor of the City of Manchester, the deputy chief, a captain and a sergeant of the Manchester Police Department, and a lieutenant of the bureau. Further offers of proof and letters from community members, exhibits, and statistical reports concerning police service calls were also introduced.

Mayor Frank C. Guinta testified that he did not feel that the activities at Club Omega "me[t] the standard or the threshold of a safe and secure environment ... based on the number of incidents I see, particularly underage drinking, stabbings inside the complex, to me, that's not acceptable." Further, the mayor testified concerning the large number of calls to the Manchester Police Department for service to both Club Omega and the surrounding area. He detailed his receipt of some two to three dozen telephone calls from the police department, city employees, and constituents concerning Club Omega, with only one call in support of the facility. He testified that, prior to his election as mayor, he had, as alderman for the ward in which Club Omega was situated, tried to contact Omega with no success. Mayor Guinta denied that the city was "targeting" Omega or that the renewal of Omega's license was a "political issue," but readily acknowledged that the media had given active coverage to the events at Club Omega that occurred during the campaign season.

Deputy Chief Gary Simmons of the Manchester Police Department testified that Omega had been cooperative with the police department's efforts to alleviate problems, yet there had still been "stabbings, fightings,

and ... a drive-by shooting" at the club, causing concern for public safety and a drain on police resources from the rest of the city. Deputy Chief Simmons further testified that, while the level of negative activity at Club Omega had dropped, perhaps because of a drop in the club's overall patronage, he did not believe that Omega was successful in curtailing those sorts of problems that were present prior to the drop in patronage.

Captain David Mara of the Manchester Police Department testified regarding the number of police calls for service to Club Omega and to the surrounding area, including the Verizon Wireless Arena and Club Envy. Captain Mara testified that during the time period from July 2005 to December 14, 2005, Club Envy had twenty-one police service calls for disorderly conduct; Club Omega had nearly 120 disorderly conduct calls during the same time period. Captain Mara provided further testimony regarding a stabbing and shooting right outside the club and reports from surrounding business owners of vandalism and other property damage.

Sergeant Kevin Kincaid of the Manchester Police Department, and a member of the mayor's alcohol, tobacco and other drug task force, testified that he had worked numerous police details at Club Omega over the previous two years, and that the level of assaults at the club was greater than that at other area clubs. Further, he testified as to the club's security systems, and of the club's seeming inability to curb the number of assaults and fights in spite of that security. Sergeant Kincaid testified that he believed the level of criminal behavior by club patrons resulted from "a total disregard for the rules of the club" and that the club's inability to control its patrons resulted in an unsafe environment for patrons and police officers.

Lieutenant Kyle Metcalf of the bureau provided testimony via an offer of proof concerning, among other things, "[h]appy hour violations, disorderly premise violations, failure to have affidavits on file, advertisement violations, service to minors, intoxicated individuals ... [and] failure to maintain an orderly premise." Lieutenant Metcalf also testified that club patrons had assaulted liquor investigators.

Christopher Stawasz, the executive director of Rockingham Ambulance, the city's emergency medical services provider and a neighboring business to Club Omega, testified that Rockingham responded to Club Omega approximately once a month in 2005 for some type of emergency. In addition, he testified concerning problems with the club's patrons using Rockingham's parking spaces, increased vandalism and trash, and Rockingham's installation of increased security equipment.

Timothy Rourke of the Making It Happen Coalition for Resilient Youth testified concerning underage access to alcohol at Club Omega during its "18-plus" nights. Tracey Degges, a representative from the Manchester

Neighborhood Housing service testified that "dozens" of underage youth had told her that they had been served alcohol at Club Omega.

 Given this evidence, we cannot say that the commission's findings and rulings in this case lacked evidential support, *see id.*, or that the commission's decision to deny the renewal of Omega's license was either unjust or unreasonable, *see Baldoumas*, 149 N.H. at 737.

## VIII

Finally, Omega alleges a "denial of due process" because of a conflict between New Hampshire Administrative Rules, Liq 206.04(f) and RSA chapter 541-A, and also alleges that Rule 206.04(a) is "unlawful" because it conflicts with RSA 541:3. As Omega has briefed only the issue concerning Rule 206.04(a), we limit our discussion to that question. *See Colla*, 153 N.H. at 210 (issue waived when raised in notice of appeal, but not briefed). At the outset, we agree with Omega's argument.

The version of Rule 206.04(a) in effect at the time of the January 25-26, 2006 adjudicative hearing provided:

> (a) Any party to an adjudicatory hearing may petition the commission for a rehearing within 5 calendar days of being notified of the commission's decision.

RSA 541:3 provides:

> Within 30 days after any order or decision has been made by the commission, any party to the action or proceeding before the commission, or any person directly affected thereby, may apply for a rehearing in respect to any matter determined in the action or proceeding, or covered or included in the order, specifying in the motion all grounds for rehearing, and the commission may grant such rehearing if in its opinion good reason for the rehearing is stated in the motion.

We note that, effective July 1, 2006, Rule 206.04(a) was amended to provide for a petition for a rehearing "within 30 calendar days of being notified of the commission's decision."

The conflict between previous Rule 206.04(a) and RSA 541:3 is readily apparent, and Omega should not have been required to file its motion for rehearing within five calendar days of being notified of the commission's decision of February 8, 2006. The commission does not dispute that previous Rule 206.04(a) was in conflict with RSA 541:3. It notes, however, that the error of holding Omega to the five-day requirement was corrected

by Interim Order I, which granted Omega an additional twenty-five days from the February 16 date of the interim order

> in order to allow additional time, pursuant to RSA 541:3, to review a full transcript or develop further arguments for its Motion for Rehearing. The Commission grants the additional twenty-five (25) days to supplement the five (5) days permitted in Liquor Rules to equal the thirty (30) days as recited in RSA 541:3.

While we agree that previous Rule 206.04(a) was in direct conflict with RSA 541:3, Omega has failed to show that it was materially prejudiced by that conflict, given the corrective actions of the commission. We also agree with the commission that the existence of the conflict, without more, does not violate the due process rights of a party. Given the conflict between the rule and the statute, the language of the statute supersedes that of the rule. *See Woodman v. Perrin*, 124 N.H. 545, 549 (1984). The commission agreed with that portion of Omega's motion for rehearing that recognized this conflict, and issued Interim Order I to correct it.

## IX

Omega requests this court to reverse the commission's decision of February 8, 2006, and order the commission to renew Omega's license "based upon the multiple procedural and statutory errors of law committed by the Commission, which materially prejudiced [Omega] and its right to a fair and just hearing." We agree that the commission made procedural errors in the conduct of the proceedings against Omega, and the commission has conceded the same. While we find those procedural errors to be troubling, and admonish the commission that it must take pains to avoid such errors in the first instance, we note all of the commission's efforts to correct those same errors. Given the commission's corrective measures, we cannot say that the commission's decision to deny Omega's application for renewal of its liquor license was either unjust or unreasonable.

*Affirmed.*

DALIANIS, DUGGAN, GALWAY and HICKS, JJ., concurred.