NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

9th Circuit Court-Manchester District Division
No. 2020-0320

ROBERT ST. ONGE

v.

OBERTEN, LLC

Argued: April 14, 2021
Opinion Issued: September 2, 2021

Shaughnessy Raiche, PLLC, of Bedford (Brian C. Shaughnessy on the brief and orally), for the plaintiff.

Wadleigh, Starr & Peters, PLLC, of Manchester (Craig Donais and Stephen Zaharias on the memorandum of law, and Craig Donais orally), for the defendant.

MACDONALD, C.J. The plaintiff, Robert St. Onge, appeals an order of the Circuit Court (Lyons, J.) dismissing his claim brought under RSA chapter 540-A against the defendant, Oberten, LLC, on the ground that the sober living facility it operates, and in which the plaintiff lived, is a "group home" under RSA 540:1-a, IV(c) and, therefore, is exempt from RSA chapter 540-A. See RSA 540:1-a, IV(c) (Supp. 2020). We affirm.

I.  Background

        The following facts are undisputed for the purposes of this appeal.  The plaintiff participated in the defendant's sober living program, "Live Free Structured Sober Living."  The purpose of Live Free Structured Sober Living is to help men and women recover from chronic drug and alcohol addiction through multiple pathways to recovery.  As part of the program, participants are provided sober living accommodations.  The plaintiff was one of 12 residents at the defendant's Manchester location.  All program participants must agree, in writing, to certain rules, including that they will not use, possess, or seek alcohol, drugs, or paraphernalia.  Any violation of the rules may result in a participant's immediate expulsion from the program and the sober residence.  The contract the plaintiff signed explicitly provided that it was not a lease and that "residents of Live Free Structured Sober Living have no tenant rights."

        Despite being aware of, and agreeing to, these rules, the plaintiff violated them and, as a result, was discharged from the program and required to vacate the sober living facility.  He subsequently filed a petition alleging that the defendant violated RSA chapter 540-A by using "self-help" to evict him.  The defendant moved to dismiss the petition, arguing that because its facility is a "group home," it is not a "landlord" required to bring an eviction proceeding under RSA chapter 540, and the plaintiff is not a "tenant" entitled to the protections of RSA chapter 540-A.  The trial court agreed with the defendant, and this appeal followed.

II.  Analysis

        Resolving the plaintiff's appeal requires that we engage in statutory interpretation.  Anderson v. Robitaille, 172 N.H. 20, 22 (2019).  We review the trial court's statutory interpretation de novo.  Id.  We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning.  Id.  We give effect to every word of a statute whenever possible and will not consider what the legislature might have said or add language that the legislature did not see fit to include.  In re J.P., 173 N.H. 453, 460 (2020).  We also construe all parts of a statute together to effectuate its overall purpose and avoid an absurd or unjust result.  Anderson, 172 N.H. at 22.  However, we do not construe statutes in isolation; instead, we attempt to construe them in harmony with the overall statutory scheme.  Id.

        "RSA chapter 540-A and RSA chapter 540 are . . . part of the same overall statutory scheme."  Id. at 23.  RSA 540-A:2 generally prohibits a landlord from "willfully violat[ing] a tenant's right to quiet enjoyment of his tenancy" and from willfully "attempt[ing] to circumvent lawful procedures for eviction under RSA [chapter] 540."  RSA 540-A:2 (2007).  RSA 540-A:3 "forbids

2

a series of specific acts," such as "willfully denying a tenant access to and possession of the rented or leased premises without proper judicial process." Anderson, 172 N.H. at 23 (quotations omitted); see RSA 540-A:3, II (2007). RSA 540-A:4 affords a tenant the right to seek injunctive relief and damages for a landlord's violation of RSA 540-A:2 or :3. Anderson, 172 N.H. at 23; see RSA 540-A:4 (Supp. 2020). In addition, under certain circumstances, a tenant may assert a claim under RSA chapter 540-A as a defense or counterclaim to a landlord's summary possessory action brought under RSA chapter 540. Anderson, 172 N.H. at 23; see RSA 540:13-a (2007).

RSA chapter 540-A defines a landlord as one who "rents or leases," and a tenant as one "to whom a landlord rents or leases," residential premises. RSA 540-A:1, I-II (2007). However, because RSA chapter 540-A and RSA chapter 540 are "part of the same overall statutory scheme," when determining who is a "tenant" for the purposes of RSA chapter 540-A, we do not confine our review to the definition in that chapter; we also examine the definition in RSA chapter 540. Anderson, 172 N.H. at 23.

RSA 540:1-a, IV provides that "[t]he term 'tenant' or 'tenancy' shall not include occupants or occupancy" in certain places and that the provisions of RSA chapter 540 shall not apply to those places. Among the places to which RSA chapter 540 does not apply are "[r]ooms in student dormitories, nursing homes, hospitals and any other facilities licensed under RSA 151 or certified under RSA 126-A, convents, monasteries, asylums, or group homes." RSA 540:1-a, IV(c). Thus, for the purposes of both RSA chapter 540-A and RSA chapter 540, an occupant of a room in one of the enumerated facilities is not a "tenant" and his or her occupancy is not a "tenancy."

A. Group Home

The primary dispute between the parties is whether the facility at issue is a "group home." "Group home" is not defined in either RSA chapter 540-A or RSA chapter 540. The defendant argues that the term can be interpreted according to its common meaning, and, as defined by a dictionary, refers to any "residence for persons requiring care or supervision." Merriam-Webster's Collegiate Dictionary 552 (11th ed. 2003). The defendant reasons that the sober living facility at issue falls within that broad definition.

The plaintiff counters that the term "group home" cannot be interpreted according to common usage because it "has a specific meaning when used by the legislature." Relying upon the definitions of the term in RSA 47:11-b and RSA 170-E:25, II(b), the plaintiff contends that a "group home" is a facility "licensed by the [New Hampshire] Department of Health and Human Services (DHHS) under RSA 161:2, IV," which "provides housing for children in need of

3

services." See RSA 47:11-b (2012); RSA 170-E:25 (2014). The plaintiff reasons that because the facility at issue is not licensed by DHHS and does not provide housing for children, it is not a "group home."

"We will follow common and approved usage except where it is apparent that a technical term is used in a technical sense." Appeal of Public Serv. Co. of N.H., 125 N.H. 46, 52 (1984); see RSA 21:2 (2020) (providing that, for all statutes, "[w]ords and phrases shall be construed according to the common and approved usage of the language; but technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in law, shall be construed and understood according to such peculiar and appropriate meaning"). The plaintiff's position that in RSA 540:1-a the legislature used "group home" in a technical sense to refer to state-licensed facilities that house children in need of services is untenable. See Appeal of Public Serv. Co. of N.H., 125 N.H. at 50, 53-55 (rejecting the public utility's assertion that the statute's use of the term "construction work in progress" assumes a technical accounting definition of that phrase as "the total of the balances of work orders for electric plant in process of construction" (quotations omitted)).

Nothing in the text of RSA chapters 540-A and 540 makes it apparent that the legislature used the term "group home" in RSA 540:1-a, IV(c) in a technical sense to refer to state-licensed facilities housing children in need of services. Indeed, the text of RSA 540:1-a, IV(c) demonstrates that when the legislature intends to limit a term in that statute to state-licensed facilities, it knows how to do so. Cf. Appeal of Baldoumas Enters., 149 N.H. 736, 739 (2003) (stating that language elsewhere in statutory scheme "demonstrates that when the legislature intends to create liability for negligence instead of strict liability, it knows how to do so"). Among the facilities enumerated in RSA 540:1-a, IV(c) are "hospitals and any other facilities licensed under RSA 151 or certified under RSA 126-A." Had the legislature intended to limit the term "group home" to facilities licensed under RSA 161:2, IV, it would have said so.

The plaintiff's reliance upon the statutory definitions of "group home" in RSA 47:11-b and RSA 170-E:25, II(b) — two statutes with no relationship to RSA chapters 540-A and 540 — fails to persuade us that the legislature used the term in RSA 540:1-a, IV(c) in a technical sense. RSA 47:11-b authorizes city councils to "appropriate money to support or aid group homes" and provides that "[f]or the purposes of this section, a group home is an institution or home which is supervised and licensed pursuant to the provisions of RSA 161:2, IV, and provides residential and counseling services to persons under the age of 21." No language in RSA chapter 47, RSA chapter 540-A, or RSA chapter 540 links the definition of "group home" in RSA 47:11-b to the use of the term in RSA 540:1-a, IV(c). Moreover, RSA 47:11-b is part of RSA chapter 47, which pertains to the powers of city councils, and there is no overlap between that subject matter and the subject matters addressed in RSA chapters 540-A and 540.

We reach similar conclusions with respect to the second statute upon which the plaintiff relies, RSA 170-E:25, II(b). RSA chapter 170-E governs the licensing of child daycare agencies, child residential care facilities, and child-placing agencies. RSA 170-E:1, :24 (2014). RSA 170-E:2 defines terms related to child daycare agencies, and RSA 170-E:25 defines terms related to child residential care facilities and child-placing agencies. RSA 170-E:2 (Supp. 2020), :25 (2014). RSA 170-E:25 defines "child care agency" as used in RSA chapter 170-E and specifies the "types of child care agencies" to which RSA chapter 170-E applies. RSA 170-E:25, II(b) defines "group home" as "a child care agency which regularly provides specialized care for at least 5 but no more than 12 children who can benefit from residential living either on a short-term or long-term basis."

There is no overlap between the subject matters addressed in RSA chapter 170-E and those addressed in RSA chapters 540-A and 540. Nor is there any language in any of those chapters linking the definition of "group home" in RSA 170-E:25, II(b) to the use of the term in RSA 540:1-a, IV(c). Accordingly, we decline to construe the term "group home" in RSA 540:1-a, IV(c) so that it is consistent with the legislature's definition of that term in these dissimilar statutes. See Anderson, 172 N.H. at 27 (declining to equate the definition of "tenant" in RSA 540:1-a, IV with the definition of "permanent resident" in RSA 78-A:3, VIII when there was no language in RSA chapter 78-A demonstrating legislative intent to equate the definitions and when RSA chapter 78-A "is not part of the statutory scheme governing the relations between landlords and tenants").

We are also unpersuaded by the plaintiff's public policy arguments regarding the need to protect those "recovering from alcohol or drug addiction" from "arbitrary or ill motivated evictions" because those individuals are "especially vulnerable." The plaintiff's public policy arguments "are made to the wrong forum as matters of policy are reserved for the legislature." Id. at 26.

We, therefore, look to the common usage of "group home," using the dictionary for guidance. See K.L.N. Construction Co. v. Town of Pelham, 167 N.H. 180, 185 (2014). The plain meaning of "group home" is "a residence for persons requiring care or supervision." Merriam-Webster's Collegiate Dictionary, supra at 17a-18a, 552 (providing 1967 as the date of the earliest recorded use of the term "group home" in English); see New Oxford American Dictionary 768 (3d ed. 2010) (defining a "group home" as "a home where a small number of unrelated people in need of care, support, or supervision can live together, such as those who are elderly or mentally ill").

We also note that "[a] law means what it meant to its framers and its mere repassage does not alter that meaning." Appeal of Naswa Motor Inn, 144 N.H. 89, 91 (1999) (quotation omitted). RSA chapter 540 has exempted "group homes" from the definition of "tenant" and "tenancy" since RSA 540:1-a was

5

first enacted in 1985.  See Laws 1985, 249:1.  Our cases from that approximate time period support the inference that, when RSA 540:1-a was first enacted, "group home" did not refer exclusively to a residence for children.  See, e.g., Region 10 Client Mgt., Inc. v. Town of Hampstead, 120 N.H. 885, 886-87 (1980) (using the term "group home" to refer to a "ranch style, single-story building" housing eight "developmentally-impaired or physically-disabled adults" and their caretakers).  Based upon the foregoing, we conclude that the plain meaning of "group home" as used in RSA 540-A:1-a, IV(c) is "a residence for persons requiring care or supervision."

Given the undisputed facts, the sober living facility at issue is a "group home" according to the plain meaning of the term.  It is a residence for persons requiring care or supervision; here, individuals seeking to recover from chronic drug and alcohol addiction.  See City of Edmonds v. Oxford House, Inc., 514 U.S. 725, 729 (1995) (pertaining to "a group home . . . for 10 to 12 adults recovering from alcoholism and drug addiction").  Because the facility at issue is a "group home" under RSA 540:1-a, IV(c), the relationship between the defendant and the plaintiff was not a "tenancy."  Accordingly, the plaintiff was not entitled to the protections of RSA chapter 540-A, and the defendant need not have brought an eviction proceeding under RSA chapter 540 before requiring him to vacate his room.

B.  Emergency Order #4

Alternatively, the plaintiff argues that Emergency Order #4, issued by Governor Sununu on March 17, 2020, precluded the defendant from requiring him to vacate his room at the sober living facility, even if that facility is a "group home" within the meaning of RSA 540:1-a, IV(c).  Emergency Order #4 provided:

> 1.  No owner of non-restricted property or restricted property, as those terms are defined in RSA 540:1-a, may initiate eviction proceedings under RSA 540 during the State of Emergency declared in Executive Order 2020-04 and no eviction order shall be issued or enforced during the State of Emergency declared in Executive Order 2020-04.  All applicable provisions of RSA 540 or any law, rule or other regulation which would allow for the initiation of eviction proceedings or the issuance of an eviction order are hereby suspended for the duration of the State of Emergency declared in Executive Order 2020-04.

> 2.  Any violation of Section 1 [of] this Order by a landlord, as that term is defined in RSA 540-A:1, shall be considered a prohibited act under and a violation of RSA 540-A:3.

6

3.  All judicial and non-judicial foreclosure actions under RSA 479 or any other applicable law, rule or regulation are hereby prohibited during the State of Emergency declared in Executive Order 2020-04, and all applicable provisions of any law, rule, or other regulation which would allow for the initiation of foreclosure proceedings are hereby suspended for the duration of the State of Emergency declared in Executive Order 2020-04.

4.  No provision in this Order shall be construed as relieving an individual of their obligations to pay rent, make mortgage payments, or any other obligation which an individual may have under a tenancy or mortgage.

5.  The Attorney General shall have the authority to enforce the provisions of this Order through any methods provided by current law.

Emergency Order #4 Pursuant to Executive Order 2020-04, available at https://www.governor.nh.gov/sites/g/files/ehbemt336/files/documents/emergency-order-4.pdf (last checked September 1, 2021).  Emergency Order #4 was terminated by Emergency Order #51 on July 1, 2020.  Emergency Order #51 Pursuant to Executive Order 2020-04 as Extended by Executive Orders 2020-05, 2020-08, 2020-09 and 2020-10, available at https://www.governor.nh.gov/sites/g/files/ehbemt336/files/documents/emergency-order-51.pdf (last checked September 1, 2021).

The plaintiff argues that "the exclusion of RSA 540:1-a, IV(c)" does not apply to Emergency Order #4 because RSA 540:1-a, IV(c) concerns the definition of "tenant" and "tenancy" and "[t]he order uses the definition of landlord" in RSA 540-A:1.  However, as we have previously explained, because RSA chapters 540-A and 540 are part of the same overall statutory scheme, we construe the statutory definitions contained in one chapter in light of those contained in the other.  See Anderson, 172 N.H. at 23.

The plaintiff further contends that Emergency Order #4 pertains to evictions under RSA chapter 540-B, and that the sober living facility at issue constitutes a "shared facility" within the meaning of RSA 540-B:1.  This argument is unavailing because RSA 540-B:1, II(c) excludes "group homes" from the definition of a "shared facility."  Because RSA chapter 540-B and RSA chapter 540 concern similar subject matters, we conclude that the term "group home" has the same meaning in both chapters.  See id.  Accordingly, the sober living facility at issue constitutes a "group home" for the purposes of both RSA 540:1-a, IV and RSA 540-B:1, II(c).  We have reviewed the plaintiff's remaining arguments and conclude that they warrant no discussion.  See Vogel v. Vogel,

137 N.H. 321, 322 (1993).  We decline to address any argument that the plaintiff raised at oral argument, but did not adequately brief.  See Bedford Sch. Dist. v. State of N.H., 171 N.H. 246, 252 (2018).

For all of the above reasons, we uphold the trial court's dismissal of the plaintiff's petition brought pursuant to RSA chapter 540-A.

Affirmed.


HICKS, BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.